1. Corporations 13 — Legal status of corporation organized undergeneral law is same as if created by special act.
Legal status of corporation organized under general corporation law of state is same as if it had been created by special act of the Legislature.
2. Corporations 18 — Certificate of incorporation provision notwarranted by general corporation law should be rejected assurplusage.
Provision in corporation's certificate of incorporation, not warranted by general corporation law under which it was organized, constitutes no part of certificate of incorporation or charter, and should be rejected as surplusage.
3. Corporations 181(1) — Statute authorizing corporation tocreate, define, and limit stockholder's powers held not to authorizeabsolute denial to stockholders of right to examine corporation'srecords (General Corporation Law, § 5, par. 8).
General Corporation Law, § 5, par. 8 (Rev. Code 1915, § 1919), providing that certificate of incorporation may contain any provision creating, defining, limiting, and regulating powers of corporation, directors, and stockholders, or any class of stockholders, not contrary to law, does not embrace power to absolutely deny to stockholders right to examine corporation's records, but merely confers power to reasonably limit and regulate exercise of such right at proper times, under proper conditions, and for a proper purpose, so as not to unreasonably interfere with company's business.
4. Corporations 181(1) — Stockholders' common-law right toexamine corporation's records can only be taken away by statute.
Stockholders' common-law right to examine books and records of corporation cannot be taken away, except by a statute that expressly or by necessary implication authorizes it.
5. Corporations 181(1) — Statute authorizing stockholders toexamine stock ledger does not authorize inference that corporation mayprevent examination of other records (General Corporation Law,§ 29).
General Corporation Law, § 29 (Rev. Code 1915, § 1919), giving stockholders right at all times during usual hours for business to examine original or duplicate stock ledger of company at its principal office or place of business, does not require inference that stockholders' common-law right to examine any other records under proper conditions and for proper purposes was thereby taken away.
6. Mandamus 129 — Court must safeguard rights of corporation assuch, as well as rights of stockholders, as respects examination ofcorporate records.
Though it is the duty of the court to protect the rights of stockholders as respects examination of corporation's books and records, it is equally the duty of the court to safeguard rights of corporation as such.
7. Corporations 181(1) — Right of stockholders to examinecorporation's books must be determined on facts of particular case.
Every case involving right of stockholders to examine corporation's books and records must be determined on its own facts, extent and scope of privilege granted depending largely on company's treatment of stockholders' legitimate request, and extent to which corporation has furnished stockholders, by financial statements or otherwise, information relative to conduct and condition of its business.
8. Corporations 181(5) — Stockholder's failure to make demand forinspection of records on directors held not to defeat right thereto,where he made demand on president and company's resident agent.
Where stockholder made demand on president of corporation and on its resident agent at home office to permit him to inspect and make copies of corporation's records to determine value of his stock, his legal right to examine records was not defeated because demand was not made on board of directors, which under corporation's by-laws could alone grant the permission; it being duty of president or resident agent to submit demand to directors.
Mandamus by the State, on the relation of Edwin R. Cochran, Jr., against the Penn-Beaver Oil Company, a domestic corporation.
 Decision in accordance with opinion.
Petition for a writ of mandamus. Answer of defendant, with motion to dismiss petition.
The petition of the relator contains, among other averments, the following:
That he is a stockholder in the said Penn-Beaver Oil Company and that he is the owner, in his own name, of 4,900 shares of the common capital stock of said company (there being but one class of capital stock), of the par value of $1 per share, and that he is also the owner, by assignment, to him, of 3,000 shares of the said common capital stock of said company, of the par value of $1 per share, which said shares have not heretofore been transferred to him in his name on the books of said company.
That since he has become a stockholder of said company as aforesaid the petitioner has made repeated demands and efforts, both at the said principal office of said company at No. 927 Market street, in the city of Wilmington, Delaware, and at the principal office of said company at No. 1210 Pennsylvania Building, in the city of Philadelphia, and state of Pennsylvania, on the officers and agents of the said Penn-Beaver Oil Company, and particularly on the said Lewis Frazier Stewart, the president thereof, and on the Corporation Guarantee Trust Company, the resident agent thereof, in the state of Delaware, to permit him to examine and inspect and make copies of the whole or any part of the books, papers, and other instruments of writing belonging to said company, which were under the direction and control of said company, or of said officers and agents, but your petitioner avers that all such information, right to inspect and make copies of and examine all said papers, has always been refused and denied to your petitioner and his duly authorized agents by the officers and agents of said company, notwithstanding the repeated demands to inspect and examine the same, made by your petitioner and his agents and attorneys as aforesaid, excepting that your petitioner was permitted to inspect the duplicate stock ledger of the company held at Wilmington, Delaware, at the time of the last annual meeting, hereinafter referred to.
That without a full inspection and leave to take copies of said books, papers, accounts, leases, agreements, ledgers and other instruments of writing, the petitioner cannot in any way ascertain the accurate information, which he desires and to which he is entitled as a stockholder as aforesaid.
That he wishes to inspect said books, papers and other instruments of writing not from any idle curiosity, and not for any improper purposes, but solely because they furnish the best evidence, and in many cases, the only evidence accessible to your petitioner of the facts thereby shown. That said facts are material and necessary to your petitioner for the purposes hereinbefore stated and to enable him to determine the value of his said shares of stock.
That no officer or agent of said company, excepting the Corporation Guarantee Trust Company, the resident agent thereof, resides within the said state of Delaware.
Therefore, the petitioner, being without other adequate remedy in the premises, prays your honors that a summons may issue out of this honorable court, directed to and requiring the said defendant, the Penn-Beaver Oil Company, to appear in said court and file an answer to this petition, at a time to be fixed by the court, and to show cause why a writ of peremptory mandamus shall not issue against it, commanding it to suffer and permit your petitioner, his agents and attorneys to inspect and make copies of the aforesaid books, papers, accounts, contracts, agreements, conveyances, assignments, ledgers, records and all other instruments of writing belonging to the said Penn-Beaver Oil Company, to wit:
 * * *
Such inspection and copies to be made during the usual hours of business.
Penn-Beaver Oil Company, the defendant, in its answer, admits, or does not deny, the averments in the relator's petition, respecting his stock ownership and his requests for information and permission to examine the books and papers of the company.
The defendant says:
1. That in the certificate of incorporation of this defendant the board of directors thereof is expressly authorized as follows:
"(c) To determine from time to time whether, and, if allowed, under what conditions and regulations, the accounts and books of the corporation shall be open to the inspection of the stockholders, and the stockholders' rights in this respect are and shall be restricted or limited accordingly, and no stockholder shall have any right to inspect any account or book or document of the corporation, except as conferred by statute or authorized by the board of directors, or by a resolution of the stockholders."
2. That the by-laws of this defendant, adopted pursuant to the provisions of its certificate of incorporation, in this behalf, provide as follows:
"Inspection of Books and Accounts. 46. The books, accounts and records of the company shall be open to inspection by any member of the board of directors at all times; stockholders may, in the discretion of the board, inspect the books of the company at such reasonable times as the board of directors may by resolution designate."
3. That the directors of this defendant have made no standing order, by resolution or otherwise, determining the general right of stockholders to inspect books and accounts of this defendant, or fixing times or circumstances therefor.
4. That said petitioner has never applied to the directors of this defendant, or made any formal request upon them for leave or opportunity to inspect the books, papers and accounts of this defendant, nor has said petitioner taken any steps whatsoever to invoke the discretion of the Board of Directors of this defendant, or to secure from the directors of this defendant the consideration of a resolution either permitting or denying to said petitioner the right or opportunity to examine said books, papers and accounts of the defendant.
5. That the refusal of the president of this defendant, and of the local agent of this defendant within the state of Delaware, to permit the examination of the books and papers of this defendant by the said petitioner was in the absence of and wholly without any consideration of the request of said petitioner to so examine the books and papers of this defendant, and said officer and representative of this defendant had no other course open to them in the absence of some action by the board of directors of this defendant, pursuant to the charter and by-laws as above set forth, except to deny the alleged application and requests of said petitioner to examine such books and papers.
The defendant avers that the objects and purposes of said petitioner in demanding access to, examination of and the taking of copies of the books, records and papers of this defendant, are not as averred by said petitioner in his said petition; that said petitioner, in making said demands, and in bringing the present action, is moved by the desire and purpose to annoy and oppress and give trouble to this defendant and its officers and directors, and by carrying on a fishing expedition through the books, papers and records of the company to endeavor to find some basis for promoting litigation against the defendant and its officers.
[1, 2] The defendant corporation was organized under the general corporation law of the state, but its legal status would be the same if it had been created by a special act of the Legislature. 14 C.J. § 107. The vital question in this case is whether the provision inserted in defendant's certificate of incorporation, which gives the company the power to deny a stockholder the right to examine books and records, was warranted by anything contained in the general corporation law, or any other law of the state. If the general corporation law, the enabling act, authorized the provision, it would be as effective as though the Legislature had granted it by direct and special act. If such provision was not warranted by the general corporation law, then it constitutes no part of the certificate of incorporation, or charter, and should be rejected as surplusage. This proposition is amply supported by authority. State ex rel. Ross v. Anderson, 31 Ind. App. 34,67 N. E. 207, and other cases.
[3] The defendant contends that the eighth paragraph of section 5 of the General Corporation Law (Rev. Code 1915, § 1919) warrants the following provision in its certificate of incorporation authorizing the directors —
"(c) To determine from time to time whether and, if allowed, under what conditions and regulations the accounts and books of the corporation shall be open to the inspection of the stockholders, and the stockholders' rights in this respect are and shall be restricted or limited accordingly, and no stockholder shall have any right to inspect any account or book or document of the corporation, except as conferred by statute or authorized by the board of directors, or by a resolution of the stockholders."
The eighth paragraph of section 5 of the General Corporation Law, relied on by the defendant, is as follows:
"8. The certificate of incorporation may also contain any provision which the incorporators may choose to insert for the regulation of the business and for the conduct of the affairs of the corporation, and any provisions creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any class of the stockholders: Provided, such provisions are not contrary to the laws of this state."
The first question that arises is this: Does the authority to create, define, limit and regulate the powers of stockholders embrace the powerto absolutely deny to stockholders the right to examine the books and records of the company? It seems to us that those words were not intended to give the corporation the power to prevent any inspection or examination of the company's books. Given their natural and obvious meaning, they would seem to confer upon the company the powerto reasonably limit and regulate a power that the stockholder possessed, and not to entirely deprive him of it.
[4] Under the common law a stockholder had the right to examine the books and records of the company, and that right could not be taken away except by a statute that expressly or by necessary implication authorized it. There is no such statute, and we conclude that the provision in the certificate of incorporation of defendant company, under which the relator was denied the right to inspect the company's records, forms no part of its charter and should be disregarded.
The corporation defendant adopted a by-law to the same effect as the provision improperly inserted in its certificate, but we do not understand it is claimed that a by-law could deprive the stockholder of his legal right to examine the company's books. On the contrary, counsel for the defendant says in his brief:
"The question before the court is not whether by virtue of a general power to make by-laws, a corporation may adopt a by-law making it discretionary with the board of directors as to whether a stockholder may examine its books generally. The question presented in the case is whether a provision may be inserted in the certificate of incorporation of a company similar to that in the charter of the defendant, and whether the language of such inserted provision should not be construed according to its natural meaning."
The words "creating, defining, limiting and regulating" the powers of stockholders may have been designed by the draftsman to give incorporators the power the defendant seeks to exercise, but it is impossible for us to believe the Legislature intended that the words should have such meaning. It is important of course, in the conduct of its business, that a corporation should have to a large extent the right to regulate the stockholder's power of examination and inspection. Otherwise, the proper conduct of its business might be seriously embarrassed by troublesome and unreasonable stockholders seeking to exercise the right of examination. But we do not think the Legislature, in enacting paragraph 8 of section 5 of the general corporation law, intended to take away that right entirely. It was meant that the corporation might provide in its charter that such right should be exercised at proper times, under proper conditions, for a proper purpose, and so as not to unreasonably interfere with the company's business. Such is the law of this and most of the other states.
If the purpose of said paragraph 8 was to give the corporation the power to prevent any examination of its books by a stockholder, the wonder is that words were not employed that would clearly express such purpose. It would probably have been difficult, if not impossible, to induce the Legislature to grant such power.
[5] The only provision of law relative to the right of stockholders to inspect the books of the company is contained in section 29 of the General Corporation Law (Rev. Code 1915, § 1943), which expressly confers upon stockholders the right "at all times, during the usual hours for business" to examine the original or duplicate stock ledger of the company at the principal office or place of business of a corporation. This statutory right was not denied the relator.
Because the Legislature saw fit to expressly give stockholders the right to examine certain records of the company, it cannot be inferred that the stockholders' common-law right to examine any other records, under proper conditions and for a proper purpose, was thereby taken away. The statute granting the power to examine the stock ledger at any time during business hours did not expressly, or by necessary implication, give the corporation the power to prevent examination of other pertinent records at proper times and under reasonable conditions.
[6, 7] While we think, for the reasons stated, that the provision in defendant's charter which permits the directors to deny any examination of the company's records by a stockholder is unauthorized and ineffective, this does not mean that in every case a stockholder may, under a general petition and prayer such as the relator has presented, be authorized by himself and his agents to examine practically all the papers, books and records of the corporation, which might result in a consumption of time and interference with business that would be injurious to the company. The law does not contemplate such a situation. While it is the duty of the court to protect the rights of stockholders, it is equally their duty to safeguard the rights of the corporation as such. Necessarily, every case involving the right to examine corporation books must be determined on its own facts. The extent and scope of the privilege granted must depend in a large degree upon the company's treatment of the relator's legitimate request, and the extent to which the company has furnished to its stockholders, by financial statements and otherwise, information relative to the conduct and condition of its business. The stockholder is entitled to reasonable information from his company along this line, and we do not think it would be ordinarily denied. If such reasonable information is furnished, the general relief asked for in this case would not be granted.
Having been unable to obtain any such information, even though expressly requested, we are of the opinion that the relator should have the right to the relief asked for, with the restriction that such right shall be exercised at reasonable times, under proper conditions, and in such a manner as to interfere as little as possible with the business of the company.
[8] The defendant contends, finally, that even if the relator is legally entitled to the inspection and examination asked for, it should not be granted, because his demand was not made on the Board of Directors which alone could grant the permission.
We think this objection is technical and unreasonable. The demand was made in writing and in person upon the president of the company at its office in Philadelphia, and also upon its resident agent at the company's home office in Wilmington. This was as much as the relator could reasonably be expected to do, and perhaps all that he could do. Presumably, he did not know when the directors would meet. It was the duty of the president or resident agent to submit the relator's demand to the directors.
The court being of the opinion that the relator, having shown that the information he seeks is for a proper purpose, viz. the ascertainment of the value of his stock, and the same having been refused, he is entitled to the relief asked for, and the defendant's motion that the petition be dismissed is, therefore, refused.
But it is also the opinion of the court that the parties should agree, if possible, what books, records and papers contain the information sought, and the inspection and examination be confined to them. If there is no such agreement, then the peremptory writ of mandamus should be issued by the Superior Court under such reasonable regulations asto time and place as it may direct, commanding the defendant to suffer and permit the relator, or his duly constituted attorney, to inspect and make copies of such of the books, papers, accounts and writings of the defendant mentioned in his petition, and only of such of them that under the direction of the said court are found essential and sufficient to furnish the information whereby the relator may determine the value of his stock. State ex rel. Brumley v. Jessup Moore Paper Co., 1 Boyce, 379, 77 A. 16, 30 L.R.A. (N.S.) 290.
 *Page 1